UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 26-cv-12068 (LTS) |
| NICOLO NOURAFCHAN, ROBERT YADGAROV, MARK ALPERIN, MIAKEL BISHAY, ARYA BOLURFRUSHAN, DAVID BRATSLAVSKY, BRIAN FENSTERSZAUB, MARK FENSTERSZAUB, SIMON FENSTERSZAUB, GABRIEL GERSHOWITZ, FERNANDO GRINBERG, BORUCH HATANIAN, YISROEL HOROWITZ, JOSEPH IZSAK, DANIEL KAVIAN, ELIYAHU KAVIAN, NOWEL MILIK, LORENZO NOURAFCHAN, DAVID OSTROV, GAVRYEL SILVERSTEIN, JOSEPH SUSKIND, and SETH WINSLOW, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION BY BORUCH HATANIAN
TO DISMISS THE AMENDED COMPLAINT**

Defendant Boruch Hatanian respectfully submits this memorandum in support of his

motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second

Claim for Relief in the Amended Complaint, which is the only claim pending against him.

**Preliminary Statement**

The SEC has cast too wide a net to reach Boruch Hatanian as an alleged remote tippee. The Second Claim for Relief in the Amended Complaint, which is the only claim against Hatanian, contains insufficient factual allegations of (1) when he received *material* non-public information, what it was, and from whom for the two stocks in which he allegedly traded, and, (2) his knowledge that the original tipper received anything of value or benefit in exchange for providing information about those two stocks in breach of a duty, as required by *Dirks v. S.E.C.*, 463 U.S. 646, 658 (1983) and its progeny. The SEC's claim also fails to allege facts reflecting *Hatanian's knowledge* about who any original tipper was, how or when the original tipper came into possession of nonpublic information, the existence or meaning of any alleged code words, or his deviation from the typical timing or nature of trades. Instead, the SEC fatally relies on conclusory group or collective pleading to attribute culpability to Hatanian. In context, however, none of the innuendo in the Amended Complaint is supported by sufficient *factual* allegations to sustain a claim against Hatanian. Rather, the *factual* allegations make it at least as plausible and likely that Hatanian engaged in any trading at issue for non-actionable reasons. As described in more detail below, the SEC has failed to plead with particularity insider trading claims against such a remote alleged tippee as Hatanian, and therefore the claim against him must be dismissed.

**Background**

The following allegations are taken from the Amended Complaint. The SEC made most of its allegations against actors other than Hatanian and more than ten stocks in which he never traded.  In the Amended Complaint, the SEC has not alleged with particularity the what, when and who concerning Hatanian's receipt of material non-public information for the two stocks in which he allegedly traded or, as required by controlling law, his awareness that an original tipper received something

of value or benefit in exchange for information about the two stocks in breach of a duty.

In Paragraphs 59 to 180 of the Amended Complaint, the SEC makes allegations about six stocks involved in an alleged insider trading scheme and then, in Paragraph 181 and a chart that follows, identifies seven other stocks involved in the alleged scheme. Of these thirteen stocks, the SEC claims in Paragraph 81 that someone mentioned one of them to Hatanian in 2020, Momenta Pharmaceuticals, Inc., but Hatanian declined to trade in it. The SEC then alleges that, nearly two years later, Hatanian traded in iRobot, Inc. and the following year traded in Momentive Global, Inc. There is no allegation of any connection between Hatanian and the other ten stocks cited in the Amended Complaint.

**Momenta**

With respect to Momenta, the SEC does not allege that Hatanian traded in it. Indeed, the SEC alleges the opposite. According to the allegations, in paragraph 81, on August 17, 2020, when a co-defendant sent a message to Hatanian that the co-defendant's brother-in-law said something about a "done deal, the announcement will be either this week or next[,]" Hatanian responded, "can't trade on inside info - but fundamentals look good | and I've wanted to add a pharma company to my portfolio." There is no allegation, however, that Hatanian then purchased or sold Momenta stock (because he did not do so).

**iRobot**

With respect to iRobot, the SEC alleges in Paragraph 128 that, on June 13, 2022, a co-defendant sent a message to Hatanian, stating: "I hope everything is going well. Call me when you have a moment to talk about the flight[,]" and the two spoke by phone that afternoon. There is no allegation, however, that Hatanian knew of any secret code meant by the word "flight." Unlike others in the Amended Complaint who are alleged to have had knowledge of codes and used them, Hatanian did not buy iRobot stock within minutes or an hour of an allegedly coded discussion. *E.g.*, Am. Compl. ¶¶ 119, 120, 124,

3

142. Rather, two days passed between the June 13, 2022 message and Hatanian's purchase on June 15, 2022, of iRobot shares, followed the next day by another purchase.[1]

In Paragraph 129, the SEC makes allegations about a co-defendant sending a message to Hatanian a day after those two purchases, on June 17, 2022, stating "I hope to find out today when the Rabbi's surgery is going to take place." In other parts of the Amended Complaint, the SEC treats references to a rabbi as a code among other co-defendants. The SEC does not, however, direct any factual allegation to Hatanian reflecting that he knew of any secret code that included a reference to a rabbi's surgery or that a discussion with a member of his synagogue about a rabbi or his response was atypical. Even if the writer meant something coded by the June 17, 2022 message, on its face, the quote "I hope to find out" is not about existing information and there is no purchase or sale of iRobot by Hatanian in meaningful proximity to that communication.

Tellingly, in Paragraph 130, the SEC acknowledges that, as of the time of that message on June 17, 2022, the co-defendant who wrote it lacked specific information: "the status of [the Amazon-iRobot transaction] was not fully known to them during late June and early July 2022." Yet, despite this acknowledged uncertainty of any non-public information "during late June and early July 2022," the SEC does not allege any other communication between Hatanian and anyone else after June 17, 2022. In other words, the only alleged communications between Hatanian and a co-defendant about iRobot

---

[1] On the merits of the motion to dismiss, the Court is not entitled to consider extrinsic evidence beyond the four corners of the complaint, except for documents incorporated therein and documents subject to judicial notice. If the Court finds that the claim should be dismissed, however, there is no corresponding rule prohibiting the Court from considering an indisputably authentic document for purposes of determining whether the dismissal should be with or without prejudice, or what should be required of the SEC to avoid futility should it seek leave to amend. Here, Hatanian purchased plane tickets for his parents a few days earlier, on June 10, 2022, for a flight to visit for family reasons that week on June 15, 2022. *See* Declaration of Barry Pollack, Exhibit A. A comparison of the context for the word flight in Paragraph 128 compared to allegations about its use elsewhere in the Amended Complaint against others tends to show that, without further factual allegations concerning Hatanian, the word "flight" in communications with Hatanian would just mean "flight."

occurred at a time that the SEC indicates information about a potential acquisition was uncertain, rather than material. Finally, the SEC relies on an allegation that Hatanian had not purchased iRobot before, but it does not allege that either the size or types of investments were unusual for him (and have not indicated any good faith basis for doing so).

**Momentive**

With respect to Momentive, the SEC's allegations against Hatanian are even more sparse.  The sum total of the allegations against Hatanian, in Paragraph 155, are that, in or about March 2023, *after the public announcement* of the Momentive deal, Hatanian was one of a group of several do-defendants who "closed out" a position in that stock.  Indeed, that allegation in Paragraph 155 specifically limits itself to certain "above-described Defendants," referring back to a list of "certain defendants" in Paragraph 153, consisting of 10 co-defendants but not Hatanian. The Amended Complaint does not even allege anything about Hatanian's purchase of Momentive stock. Glaringly absent is any allegation about who provided information to Hatanian about Momentive, and how and when that happened ahead of any purchase or sale. Hatanian appears a half-hearted, late addition by the SEC. And public records reflect rumors about Momentive being up for sale, dating back to October 2022. *See* Momentive Global Enters into Definitive Agreement to Be Acquired by Symphony Technology Group for $1.5 Billion, https://www.sec.gov/Archives/edgar/data/1739936/000119312523069366/d484732dex991.htm (referring to the "closing stock price on the day prior to media rumors regarding a potential sale on October 19, 2022").

**Group and Collective Pleading**

Beyond its flawed allegations specific to Hatanian, the SEC relies heavily on contradictory and problematic group or collective pleading. For example, in Paragraph 118, the SEC ambiguously alleges that nine defendants, including Hatanian, began making purchases of iRobot on June 9, 2022, "after

speaking with Silverstein and other defendants." But the allegations directed specifically against Hatanian are that he did not buy iRobot for another six days, without any factual allegation to support an inference that he ever spoke to Silverstein. During meet-and-confer efforts, the SEC acknowledged that, based on the information that it has, the June 9, 2022 date applied to other defendants, not Hatanian. Further, the vague group or collective allegations obfuscate the substantial time that elapsed between the June 17, 2022 messages and Hatanian's subsequent trading in iRobot. The SEC asserts in Paragraph 128 that Hatanian purchased various series of iRobot options "between June 16, and August 2, 2022" and "continued to purchase iRobot shares through July 29, 2022[.]" During meet-and-confer efforts, the SEC acknowledged that, based on the information it has, Hatanian's post-June 16, 2022 purchases occurred only between July 29, 2022, and August 2, 2022. As another example, in Paragraph 4, the SEC describes the scheme as involving two alleged high-level tippers who "tipped the confidential information to individuals who agreed to kick back a portion of the trading profits." In other places, the Amended Complaint alleges that certain defendants paid kickbacks or began paying kickbacks to Nourafchan and Yadgarov, and in Paragraph 156 that "certain of the defendants began paying kickbacks" to certain high-level tippers and "others (routed through other defendants) for the tips of confidential information." While the Amended Complaint makes these allegations about co-defendants paying a kickback, nowhere does the SEC allege that Hatanian ever made such a payment to anyone.

Fatal to the SEC's theory of liability, the Amended Complaint contains only conclusory allegations, rather than specific factual allegations suggesting Hatanian's awareness that the source of the inside information tipped others in breach of a duty of confidentiality and for a personal benefit. Rather, the SEC alleges only generically in Paragraph 10: "Each of the Defendants tipped others with material nonpublic information for a benefit and/or placed trades while aware of and on the basis of material nonpublic information obtained, directly or indirectly, from sources who they knew or

recklessly disregarded had breached a duty to maintain the confidentiality of such information."[2] Similarly, Paragraph 11 makes a vague reference to "other Defendants for a benefit…." and in Paragraph 12, the SEC alleges that certain high-level tippers "expected to, and in fact did, receive, directly or indirectly from their co-defendants and Foreign Trader 1, payments and other benefits in exchange for the insider tips they provided." But this group or collective pleading is insufficient where Hatanian is alleged to have been three levels removed from the original tipper(s). And other group or collective pleading in the Amended Complaint uses nothing more than conclusory statutory language.

## Argument

**The SEC Has Failed to Allege with Particularity the Source, Content, and Timing of Material Non-Public Information Tied to Any Purchase by Hatanian and that, as a Remote Tippee, He was Made Aware that a High-Level Tipper Breached a Duty by Disclosing Material Non-Public Information and Received a Benefit for Doing So.**

On a motion to dismiss, the "well-pleaded facts in the complaint are taken as true." *S.E.C. v. Papa*, 555 F.3d 31, 32 (1st Cir. 2009). "[T]he court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *S.E.C. v. Tambone*, 417 F. Supp. 2d 127, 130 (D. Mass. 2006). "In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *Id*. A claim has the requisite "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gill v. Bluebird Bio, Inc.*, 784 F. Supp. 3d 422, 430 (D. Mass. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

With respect to alleged schemes sounding in fraud, "Rule 9(b) requires that a complaint allege the 'time, place, and content of the alleged misrepresentations with specificity.'" *Tambone*, 417 F. Supp.

---

[2] This allegation could vaguely suggest through group pleading that Hatanian "tipped others," but there is no indication in any specific factual allegation that the SEC meant to apply that allegation to Hatanian.

2d at 130. Even such a complaint by the SEC "must specify: 1) the allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements were made and 4) how the statements were fraudulent." *Id.* (rejecting SEC's request to relax Rule 9(b) pleading standards for its claims). "In applying that standard to securities fraud actions, this circuit has been notably strict and rigorous." *S.E.C. v. Durgarian*, 477 F. Supp. 2d 342, 347-48 (D. Mass. 2007) ("The instant enforcement action by the SEC involves claims of securities fraud, and thus, the heightened pleading requirements apply."), *aff'd sub nom. S.E.C. v. Papa*, 555 F.3d 31 (1st Cir. 2009). Courts have also held that generally a complaint "may not rely on 'group pleading' to plead scienter." *In re Tyco Int'l, Ltd.*, No. 04–cv–1336–PB, 2007 WL 1687775, at *6 n. 8 (D.N.H. June 11, 2007).

With these heightened pleading standards in mind, the government cannot state a claim for insider trading "solely because a person knowingly receives material nonpublic information from an insider and trades on it." *Dirks v. S.E.C.*, 463 U.S. 646, 658 (1983). "[A]remote tippee, in order to be held liable for securities fraud, must know that the original tipper disclosed market-sensitive information in breach of a fiduciary duty and received some personal benefit from the disclosure." *Gordon v. Sonar Capital Mgmt. LLC*, 116 F. Supp. 3d 360, 363 (S.D.N.Y. 2015). "[E]ven if detail and specificity could support an inference as to the *nature* of the source, it cannot, without more, permit an inference as to that source's improper *motive* for disclosure." *United States v. Newman,* 773 F.3d 438, 455 (2d Cir. 2014) (emphasis in original), *abrogated on other grounds*, *Salman v. United States*, 580 U.S. 39, 48 (2016) ("The Government also notes that, to establish a defendant's criminal liability as a tippee, it must prove that the tippee knew that the tipper breached a duty—in other words, that the tippee knew that the tipper disclosed the information for a personal benefit and that the tipper expected trading to ensue.").

### A. The SEC Has Not Alleged with Sufficient Particularity the Who, What, When and How Concerning Hatanian.

Here, the SEC has gone too far in seeking to hold Hatanian liable as a remote tippee. The SEC

has failed to allege (1) *any* trading by Hatanian in Momenta at all; (2) how, when, and what was communicated to Hatanian about any iRobot transaction, including after the uncertainty that the SEC acknowledges existed in June and early July 2022; and, (3) when and how Hatanian came to be in possession of material nonpublic information about Momentive in advance of his (unalleged) purchase.

With respect to Momenta, the lack of a trade means no securities fraud. *S.E.C. v. Adoni*, 60 F. Supp. 2d 401, 407 (D.N.J. 1999) (rejecting the SEC's efforts "to expand Section 10(b) liability to instances in which the accused have not taken all the necessary steps for effectuating the fraud, or have been prevented from effectuating the fraud by an outside source").

With respect to iRobot, Paragraph 130 makes clear that, prior to late July 2022, there was uncertainty among the alleged sources about a potential transaction involving iRobot. Specifically, Paragraph 130 acknowledges that "the status of [the Amazon-iRobot transaction] was not fully known to them during late June and early July 2022," and states that the sources were "questioning whether [the transaction] was going to occur all." With no accompanying allegations of the "probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity[,]" (*Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) (to determine materiality, courts must assess the "probability that the event will occur"), the SEC is asking this Court to speculate about what information might have been material in mid-June, when the only alleged communication with Hatanian occurred. Similarly, the SEC is asking the Court to speculate about how and what information was passed to Hatanian ahead of trades in late July. With respect to Momentive, the SEC merely points to the act of Hatanian "closing out" his position in Momentive based on public information from a *public announcement* of a deal. The allegations about Momentive do not identify, however, any communication with Hatanian preceding this sale or any prior purchase by him.

With Rule 9(b) applicable, requiring particularized allegations, speculation based on inferences

upon inferences is not enough to survive a motion to dismiss.

**B. The SEC Has Failed to Allege Facts Reflecting that Hatanian Knew the Original Tipper Received a Benefit for Disclosing Information.**

There is also no factual allegation, directed at Hatanian personally, that he was aware that any high-level tipper or insider breached a duty or received a benefit for disclosing confidential information. There is not even an allegation that Hatanian knew the original tipper, the nature of the original tipper, or any original tipper's relationship to any nonpublic information or intermediate tippees. There is no factual allegation directed at Hatanian that he paid a kickback or knew anyone paid a kickback. And there is no specific factual allegation that Hatanian knew a co-defendant's use of the words "flight" or "rabbi" was coded. Based on the chart in Paragraph 8 of the Amended Complaint, which alleges that Hatanian is at least three levels removed from the alleged original tipper who worked for a law firm to the issuers, the SEC has failed to state a viable cause of action in the Second Claim for Relief. *See Gordon,* 116 F. Supp. 3d at 366 ("Thus, the evidence regarding the nature of Nguyen's tips, even if it could support an inference that Freeman knew that the information originated from inside Sigma, is not a sufficient basis for a jury to conclude that he knew it was disclosed in breach of a fiduciary duty.").

**C. The Gaps in the Claim Against Hatanian Cannot be Filled by Conclusory Group or Collective Pleading.**

The SEC has improperly resorted to group or collective pleading, while failing to plead with particularity what material nonpublic information was provided to Hatanian, by whom, when, and how. Cutting through the group or collective pleading not specific to Hatanian, the SEC has failed to plead facts reflecting that Hatanian participated in insider trading with the requisite awareness that a high-level tipper breached a duty of trust and confidence for a personal benefit. *See Ezell v. Lexington Ins. Co.*, 926 F.3d 48, 51 (1st Cir. 2019) (when particularity is required under Rule 9(b), the claim "must state 'the who, what, where, and when of the allegedly [misleading] representation' with particularity").

Indeed, there is no factual allegation that Hatanian did anything improper, let alone deliberately, or was required to do anything differently. Vague and conclusory allegations against a group or collection of defendants, including those that merely track statutory language or the like are insufficient. Here, the SEC's factual allegations are too sparse and at best require speculative inferences upon inferences.

### Conclusion

Based on the foregoing, this Court should dismiss the Second Claim for Relief against Hatanian with prejudice.

> Respectfully submitted,
>
> Boruch Hatanian
> by his attorneys,
>
> /s/ Lauren A. Riddle
> Barry S. Pollack (BBO# 642064)
> bpollack@psdfirm.com
> Lauren A. Riddle (BBO# 703859)
> pduffy@psdfirm.com
> Pollack Solomon Duffy LLP
> 31 St. James Ave. Suite 830
> Boston, MA 02116
> 617.439.9800
> Dated: July 31, 2026

CERTIFICATE OF SERVICE

I, Lauren A. Riddle, certify that on July 29, 2026, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and copies will be sent via email and first class mail, postage prepaid, to those indicated as non-registered participants including all counsel of record.

> /s/ Lauren A. Riddle
> Lauren A. Riddle

11