**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NICOLO NOURAFCHAN,
ROBERT YADGAROV,
MARK ALPERIN,
MIAKEL BISHAY,
ARYA BOLURFRUSHAN,
DAVID BRATSLAVSKY,
BRIAN FENSTERSZAUB,
MARK FENSTERSZAUB,
SIMON FENSTERSZAUB,
GABRIEL GERSHOWITZ,
FERNANDO GRINBERG,
BORUCH HATANIAN,
YISROEL HOROWITZ,
JOSEPH IZSAK,
DANIEL KAVIAN,
ELIYAHU KAVIAN,
NOWEL MILIK,
LORENZO NOURAFCHAN,
DAVID OSTROV,
GAVRYEL SILVERSTEIN,
JOSEPH SUSKIND, and
SETH WINSLOW,

Defendants.

**Civil Action No. 26-cv-12068 (LTS)**

---

**PLAINTIFF'S OPPOSITION TO**
**MOTION TO DISMISS BY DEFENDANT BORUCH HATANIAN**

---

**SECURITIES AND EXCHANGE COMMISSION**
Rua M. Kelly
Michael D. Foster

*Attorneys for Plaintiff Securities and Exchange Commission*

**PRELIMINARY STATEMENT**

The Complaint filed by the Securities and Exchange Commission ("Commission") details a brazen and unlawful scheme, spanning several years, in which various individuals profited from trading numerous securities on the basis of material nonpublic information tipped by attorneys Nicolo Nourafchan ("Nourafchan") and Robert Yadgarov ("Yadgarov"), as well as middlemen (including but not limited to Gavryel Silverstein) who unlawfully communicated this inside information to other Defendants who traded profitably. As the Amended Complaint ("Complaint") alleges with particularity, Defendant Boruch Hatanian ("Hatanian") profited by trading securities of publicly traded companies in advance of market-moving announcements in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5]. Hatanian is the sole defendant to move to dismiss during the pendency of the parallel criminal cases filed in this District, captioned as *United States v. Fejal et al.*, 26-cr-10133-LTS, and *United States v. Nourafchan et al.*, 26-cr-10115-LTS.

Hatanian argues that the Complaint fails to comply with Federal Rule of Civil Procedure 9(b), and more specifically, that the Complaint fails to allege, *inter alia*, (a) that the tip(s) constituted *material* nonpublic information; and (b) that Hatanian knew, should have known, or consciously avoided knowing that the material, nonpublic information was conveyed in breach of a duty and that the tipper received a personal benefit. All of Hatanian's arguments are without merit. Moreover, the Commission has now moved to further amend the Complaint to add further factual allegations regarding Hatanian. *See* Dkt. No. 88. Should the Court allow the motion to amend, Hatanian's motion to dismiss will be moot, rendering this opposition superfluous. However, since Hatanian has advised that he expects to oppose the motion to amend, the Commission will address the arguments made in Hatanian's motion to dismiss the Complaint.

## STANDARD OF REVIEW

In considering the motion to dismiss, the Court must accept all well-pleaded facts in the Complaint as true and draw all reasonable inferences in the SEC's favor. *SEC v. Tambone*, 550 F.3d 106, 118 (1st Cir. 2008), *rev'd in part on other grounds*, 597 F.3d 436 (1st Cir. 2010); *SEC v. Binette*, 679 F. Supp. 2d 153, 156 n.1, 158 (D. Mass. 2010). A motion to dismiss should be denied where, as here, the Complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility assessment is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 679 (2009). Within the context of securities law enforcement, the Supreme Court has observed that "Congress intended securities legislation enacted for the purpose of avoiding frauds to be construed not technically and restrictively, but flexibly to effectuate its remedial purpose." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (internal quotations omitted); *see also SEC v. Zandford*, 535 U.S. 813, 819 (2002) (noting same).

While Fed. R. Civ. P. 9(b) requires the Commission to state its fraud claims with particularity, Hatanian misconstrues the application of the Rule in this context. Under Rule 9(b), a "party must state with particularity the circumstances constituting fraud," however, "intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Tambone*, 550 F.3d at 119 (SEC need only allege scienter generally). In insider trading cases, these particularity requirements are relaxed when specific facts are uniquely within a defendant's knowledge. *See, e.g., SEC v. One or More Unknown Traders in the Sec. of Onyx Pharm. Inc.*, No. 13-CV-4645, 2014 WL 5026153, at *4 (S.D.N.Y. Sept. 29, 2014) (denying motion to dismiss and observing that "because insider tips are typically passed in secret, it is often impractical to require plaintiffs to allege . . . details with particularity").

## ELEMENTS OF THE SEC'S CLAIMS

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit fraud in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Insider trading is well established as a violation of Section 10(b) and Rule 10b-5. *See Dirks v. SEC*, 463 U.S. 646, 654 (1983); *SEC v. Obus*, 693 F.3d 276, 284 (2d Cir. 2012). Under the "misappropriation" theory of insider trading, "a person commits fraud 'in connection with' a securities transaction and thereby violates § 10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." *United States v. O'Hagan*, 521 U.S. 642, 653-54 (1997); *see also SEC v. Binette*, 679 F. Supp. 2d 153, 159 (D. Mass. 2010) (discussing misappropriation theory).[1] The undisclosed use of such confidential corporate information "deceives the source of the information and simultaneously harms … the investing public." *O'Hagan*, 521 U.S. at 656.

Where, as here, the insider trading involves a tipping chain, "which [is] not uncommon," liability against a tippee can be proven by showing that:

> (a) the original tipper breached a duty by tipping confidential information;
> (b) the tippee knew or had reason to know that the tippee improperly obtained the information (*i.e.*, that the information was obtained through the tipper's breach); and
> (c) the tippee, while aware of the material nonpublic information, used that information by trading or by tipping for his own benefit.

*Obus*, 693 F.3d at 288-89; *see also Dirks*, 463 U.S. at 660; 17 C.F.R. § 240.10b5–1(b) ("a purchase or sale of a security of an issuer is 'on the basis of' material nonpublic information . . .

---

[1] There are two actionable theories of insider trading liability: "classical" theory, and "misappropriation" theory. The former applies when a corporate insider trades in his or her corporation's securities based on material nonpublic information, in violation of the recognized duty of "trust and confidence" insiders owe to shareholders. *O'Hagan*, 521 U.S. at 651-52. The latter applies when confidential information is misappropriated for trading purposes, in breach of a similar duty owed to the source of the information (often an insider). *Id*. at 652. Under either theory, liability also extends to a person who, rather than trading, "tips" someone else to trade on material nonpublic information, and to the "tippee" who trades knowing (or having reason to know) the information was confidential and disseminated in violation of a fiduciary or similar duty. *See, e.g., Obus*, 693 F.3d at 285.

if the person making the purchase or sale was aware of the material nonpublic information when the person made the purchase or sale”). Moreover, it is sufficient for liability that Hatanian knew, was reckless in not knowing, or consciously avoided knowing that he traded on the basis of information received through a breach of duty by someone else for some personal benefit. *See United States v. Newman*, 773 F. 3d 438, 449 & n.3 (2d. Cir. 2014) (tippee “does not need to know the details of the [tipper]’s disclosure of information,” does “not have to know for certain how information was disclosed,” “nor the identity of the insiders,” so long as the tippee knew confidential information divulged for personal benefit), *overruled on other grounds by Salman v. United States*, 580 U.S. 39 (2016); *Obus*, 693 F.3d at 288-89 (“[c]hain tippee liability may also result from conscious avoidance” or recklessness); *see also SEC v. Musella*, 678 F. Supp. 1060, 1063 (S.D.N.Y. 1988) (finding conscious avoidance where tippees “made a deliberate decision not to ask … about the confidential source[] … because they did not want to know”).

## ARGUMENT

The Complaint provides a compelling basis to conclude that Hatanian violated the securities laws by trading on material nonpublic information obtained by the tipper’s breach. Indeed, the Complaint provides classic evidentiary support, alleging that Hatanian was one of several Defendants in a tipping chain, all trading the same securities in an identical time frame, with multiple Defendants speaking in distinct communications using the same code words. Contrary to Hatanian’s argument, the Complaint pleads all of the elements with particularity and rests on substantially more than “innuendo” or “collective pleading.” (Hatanian Mot. at 2.) Where the Court’s task is to assess the sufficiency of the allegations, with facts assumed true and all reasonable inferences drawn in the SEC’s favor, Hatanian’s motion should be denied.

**A. <u>The Complaint Sufficiently Pleads Materiality with Particularity</u>**

First, Hatanian is wrong that the Complaint inadequately alleges the materiality of the nonpublic information tipped as to iRobot[2] because of the "uncertainty that … existed" at the time Hatanian traded. (Memo in Support of Hatanian Mot. at 9.) In the context of securities fraud, materiality is defined as a substantial likelihood that a reasonable investor would consider the information important in deciding to trade a given security; in insider trading, nonpublic information is material if a reasonable investor would view the information "as having significantly altered the total mix of information made available." *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988). In other words, the information need not be perfect and, given the fast-paced nature of corporate deal-making, uncertainty does not render the information unimportant. Indeed, the Supreme Court recognized in *Basic* that merger information can become material at an early stage of negotiations "even though the mortality rate of mergers in such formative stages is doubtless high." *Basic*, 485 U.S. at 238 (*quoting SEC v. Geon Indus., Inc.*, 531 F.2d 39, 47-48 (2d Cir. 1976) (Friendly, J.)); *see also SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998) (materiality of planned acquisition "not open to doubt"). For example, in *SEC v. Mayhew*, 121 F.3d 44 (2d Cir. 1997), the Second Circuit upheld a materiality finding, even though the defendant had learned only that merger discussions were actual and serious, without knowing specific deal terms, and even though the tender offer was still months away. *Id*. at 52. Accordingly, Hatanian's argument as to lack of materiality of the iRobot tip is without merit.

---

[2] Hatanian notes that the Complaint does not particularize his trading in Momentive. While the Commission submits that the allegations as to Hatanian's trading in iRobot are more than adequate under FRCP 9(b) to deny the motion to dismiss, the Commission's proposed Second Amended Complaint includes extensive detail about Hatanian's Momentive trading, as well as additional facts about the nature and timing of Hatanian's trading in iRobot – including the fact that Hatanian simultaneously traded in Amazon, the company targeting iRobot. *See* Dkt. No. 89-1 (Proposed Second Amended Complaint).

**B. <u>The Complaint Sufficiently Pleads Scienter and Personal Benefit</u>**

Hatanian contends that the Complaint fails to allege with specificity Hatanian's state of mind with regard to his trading in iRobot, including "how, when, and what was communicated" to Hatanian by the tipper. Contrary to Hatanian's arguments, the Complaint alleges with particularity Hatanian's trading in iRobot, and does not rely on speculation to allege that Hatanian traded on material nonpublic information with scienter. Rather, the Complaint adequately alleges both that the tipper breached a duty by tipping confidential information and that Hatanian actually used the information by trading on it. *See* Compl. at ¶¶ 127-129. The Complaint also adequately alleges that Hatanian knew or had reason to know that the information was improperly obtained when he engaged in a pattern of timely and profitable trading in both iRobot and Momentive. *Id*.

As an initial matter, the Complaint alleges that "[e]ach of the Defendants tipped … or placed trades while aware of and on the basis of material nonpublic information obtained, directly or indirectly, from sources who they knew or recklessly disregarded had breached a duty to maintain the confidentiality of such information." Compl. at ¶¶ 10, 188. While this allegation relates to *all* Defendants, the Complaint then lays out circumstantial evidence as to *Hatanian's* state of mind specifically in Paragraph 81, describing his communications with Defendant Simon Fensterszaub about Momenta. On August 16, 2020, Simon Fensterszaub tried to call Hatanian and then sent a message asking Hatanian to call him. *Id*. The next day, Simon Fensterszaub explicitly told Hatanian that he had inside information about Momenta and was trading on it, writing: "According to my brother-in-law, it is a done deal, the announcement will be either this week or next | And for those reasons, is why I bought shares." *Id*. Hatanian then replies: "**can't trade on inside info** – but fundamentals look good | and I've wanted to add a pharma company

to my portfolio[.]" *Id* (emphasis added). In other words, the Complaint alleges not only that Hatanian was tipped material nonpublic information by Simon Fensterszaub, but that Hatanian knew Simon Fensterszaub's brother-in-law was a source of inside information (since Hatanian literally called the tip "inside info" that one "can't trade on").

With that critical context as to Hatanian's state of mind vis-à-vis Momenta, the Complaint adequately alleges the "who, what, where, and when" as to Hatanian's trading in iRobot. First, the Complaint alleges that Simon Fensterszaub tipped Hatanian with confidential information about the potential acquisition of iRobot by Amazon. Compl. at ¶ 127. The Complaint then alleges that after communicating with Simon Fensterszaub about the "flight"[3] (a code word, as the Complaint explained), Hatanian began buying both iRobot shares and options[4] (having never traded in iRobot before). *Id*. at ¶ 128. The Complaint then alleges that Simon Fensterszaub – who was also buying iRobot – sent Hatanian a message on June 17, 2022 about the "Rabbi's surgery" which "was a coded reference to the announcement of the Amazon-iRobot transaction," with Hatanian responding that he was "praying!" *Id*. at ¶ 129. In other words, Hatanian was communicating in coded language with an individual who he knew had access to inside information and by whom he had previously been tipped, in close proximity to Hatanian's first-ever trades in iRobot securities.

[3] This Court need not consider the extrinsic evidence submitted as Exhibit A to the Motion to Dismiss, *see* ECF No. 84-1, which purports to be a flight itinerary for Hatanian's parents traveling to Florida on June 15, 2022 (the same day Hatanian began trading in iRobot). Hatanian fails to explain why it would be a reasonable inference that Simon Fensterszaub was actually referencing Hatanian's parents' flight to Florida when he told Hatanian on June 13, 2022 to "call me … about the flight" as opposed to speaking in the coded language used by numerous Defendants – including and especially Simon Fensterszaub – to conceal the insider trading scheme. *See generally* Compl. at ¶ 57 (describing the use of coded language by Defendants, including airline "flights" for tips or "surgery" for a "rabbi"), ¶ 125 (alleging that on June 10, 2022 Simon Fensterszaub sent a message to Defendant Gavryel Silverstein noting that he wanted "to talk about our flight"), ¶ 134 (alleging that "[o]n June 12, 2022, Simon Fensterszaub messaged Eli Kavian: "I have some more flight information[.]" Kavian responded: "Yalla…/Yallaaaaaa[.]").

[4] The proposed Second Amended Complaint clarifies the nature and timing of Hatanian's options trading in iRobot.

Such allegations are not "vague and conclusory" but sufficiently specific and detailed as to Hatanian's state of mind and his actions that violated the securities laws, and thus are sufficiently pled pursuant to FRCP 9(b). *See, e.g., SEC v. Wang*, 2016 WL 7671369, at *5 (S.D. Cal. Sept. 27, 2016) ("[Defendant] does not cite to any authority for the proposition that Rule 9(b) requires a plaintiff alleging a tippee claim provide a transcript of the language used to convey the tip, and the Court does not believe any such authority exists. Indeed, because insider tips are generally passed secretly, it would seem impractical to require the SEC to provide a verbatim transcript of such communication."); *SEC v. Dubovoy*, 2016 WL 5745099, at *4 (D. N.J. Sept. 29, 2016) ("Rule 9(b) does not require plaintiffs to plead every material detail of the fraud such as date, location, and time, so long as they use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." (internal quotes and citations omitted)). *SEC v. Conradt,* 947 F. Supp. 2d 406, 412 (S.D.N.Y. 2013) ("[T]he SEC is not required to show that a remote tippee knew for certain how the initial breach of fiduciary duty occurred, but only that the tipper's conduct raised red flags that confidential information was being transmitted improperly."); *SEC v. McGee*, 895 F. Supp. 2d 669, 683 (E.D. Pa. 2012) (SEC did not need to prove that tippees "knew the insider and had any direct link with him, or that they knew how the breach occurred" (internal citations omitted)).

Neither the Commission, nor this Court, is required to read Hatanian's mind. *See Dirks*, 463 U.S. at 663 ("In determining whether the insider's purpose in making a particular disclosure is fraudulent, the SEC and the Courts are not required to read the parties' minds."). "As courts and commentators have recognized, direct evidence is rarely available in insider trading cases,

since usually the only witnesses to the exchange are the insider and the alleged tippee, neither of whom are likely to admit to liability." *SEC v. Roszak*, 495 F. Supp. 2d 875, 887 (N.D. Ill. 2007) (*citing SEC v. Peters*, 978 F.2d 1162, 1167 (10th Cir. 1992) and Bromberg & Lowenfels on Securities Fraud § 6:548)). As a result, the Commission often pleads and proves its cases through circumstantial evidence. *See*, *e.g.*, *SEC v. Sargent*, 229 F.3d 68, 74-75 (1st Cir. 2000) ("As is often true in securities fraud cases, the Commission was unable to produce direct testimony establishing that Shepard communicated nonpublic information to Sargent. The Commission instead relied on circumstantial evidence to prove its allegation."). Here, the Complaint sets forth more than enough facts and circumstances to sufficiently—*i.e.*, "generally" (per Rule 9(b))—allege that Hatanian had the requisite state of mind, particularly where these allegations are not made in a vacuum, but in a 50-plus-page Complaint against 22 Defendants, outlining circumstantial evidence of a "well-timed and well-orchestrated sequence of events, culminating with successful stock trades[.]" *United States v. Larrabee*, 240 F.3d 18, 21-22 (1st Cir. 2001); *see also U.S. v. Smith*, 155 F.3d 1051, 1069 (9th Cir. 1998) ("It is certainly not necessary that the government present a smoking gun in every insider trading prosecution.")

Hatanian is also wrong that the Complaint fails to adequately allege personal benefit as required for liability. In an insider trading case, "[l]iability … hinges on whether the tipper breached a duty of trust and confidence by disclosing the inside information, which in turn depends on whether the tipper "personally will benefit, directly or indirectly, from [the] disclosure." *United States v. Bray*, 853 F.3d 18, 25 (1st Cir. 2017).

As an initial matter, the Complaint alleges (in the context of Momenta) that Hatanian knew his source (Simon Fensterszaub) had access to inside information about market-moving corporate transactions. The fact that Hatanian explicitly stated that one "can't trade on inside

info[rmation]" is dispositive: as Judge Rakoff noted in *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287 (S.D.N.Y. 2018), the term "personal benefit" was used in *Dirks* "simply to distinguish between a lawfully-acting fiduciary and someone who embezzles for personal advantage." *Id*. at 298.

By saying "can't trade on inside info" Hatanian made plain his understanding that the Momenta tip was embezzled information. That is enough. "[M]ost lower courts ... recognize[] a broad variety of qualifying personal benefits." *Id*. at 299. Moreover, a downstream tippee "does not need to know the details of the [tipper]'s disclosure of information," does "not have to know for certain how information was disclosed," "nor the identity of the insiders," so long as the tippee knew, consciously avoided knowing, or was reckless in not knowing that the information had been disclosed in breach of someone's duty of trust and confidence for "some benefit." *United States v. Newman*, 773 F.3d at 449 n.3; *see United States v. Whitman*, 555 F. App'x 98, 106-07 (2d Cir. 2014) (approving instruction requiring tippee to have a "general understanding" that the information had been disclosed for a personal benefit); *United States v. Goffer*, 2017 WL 203229, at *17-18 (S.D.N.Y. Jan. 17, 2017) (post-*Newman* conclusion that "the tippee need only have known of the tipper's receipt of *a* personal benefit, not that the tippee knew of the *specific* personal benefit actually received," which can be based on "circumstantial evidence" and the successive trader's "conscious avoidance" of such knowledge).

## CONCLUSION

For the reasons above, the Commission asks this Court to deny Hatanian's motion to dismiss. In the alternative, the Commission requests that this Court hold the motion to dismiss in abeyance pending the Court's ruling on the motion for leave to amend the complaint.

Dated: August 26, 2026

SECURITIES AND EXCHANGE COMMISSION

*/s/ Rua M. Kelly*

Rua M. Kelly
Michael D. Foster
33 Arch Street, 24th Floor
Boston, MA 02110
Email: kellyru@sec.gov
Phone: (617) 573-8941

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 26, 2026, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notices in this case. I further certify that a copy of the foregoing will be served by e-mail or U.S. mail to any Defendants not registered in the Court's CM/ECF system to receive electronic notices in this case.

*/s/ Rua M. Kelly*