UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NICOLO NOURAFCHAN,<br>ROBERT YADGAROV,<br>MARK ALPERIN,<br>MIAKEL BISHAY,<br>ARYA BOLURFRUSHAN,<br>DAVID BRATSLAVSKY,<br>BRIAN FENSTERSZAUB,<br>MARK FENSTERSZAUB,<br>SIMON FENSTERSZAUB,<br>GABRIEL GERSHOWITZ,<br>FERNANDO GRINBERG,<br>BORUCH HATANIAN,<br>YISROEL HOROWITZ,<br>JOSEPH IZSAK,<br>DANIEL KAVIAN,<br>ELIYAHU KAVIAN,<br>NOWEL MILIK,<br>LORENZO NOURAFCHAN,<br>DAVID OSTROV,<br>GAVRYEL SILVERSTEIN,<br>JOSEPH SUSKIND, and<br>SETH WINSLOW,<br><br>Defendants. | Civil Action No. 26-cv-12068 (LTS)<br><br>(Leave to File granted on September 8, 2026) |

**REPLY IN SUPPORT OF MOTION BY BORUCH HATANIAN TO DISMISS THE AMENDED COMPLAINT**

Defendant Boruch Hatanian respectfully submits this reply in further support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Claim for Relief in the Amended Complaint, which is the only claim pending against him.

## Introduction

In its opposition (as with its recently-filed motion for leave to file a Second Amended

Complaint), the SEC's pleading issues have escalated from a clear problem under *Dirks v. S.E.C.*, 463 U.S. 646 (1983) and its progeny, to clearly defective arguments under *Ashcroft v. Iqbal*, 556 U.S. 678 (2009). While the SEC labels Hatanian's positions as simply about "materiality" and "knowledge" (Opposition at 1-2), in reality, Hatanian's positions are about the SEC's failure to plead (1) the particularity of when, what, and who concerning any alleged tip of material information to Hatanian, and (2) facts reflecting Hatanian's awareness of a tipper up the chain having breached a duty of trust and confidence by disclosing confidential inside information in exchange for a benefit. In its opposition and accompanying motion for leave to amend, the SEC concedes that (1) it did not (because it cannot) allege that Hatanian purchased or sold stock in Momenta, (2) Hatanian's name does not belong in the collective allegations in Paragraph 118 describing a specific access to inside information linked to specific stock purchases on a specific date, and (3) the Amended Complaint does not allege any purchase of Momentive stock by Hatanian, much less a tip to Hatanian ahead of his purchase of Momentive stock.

Hence, the SEC does not even allege a purchase by Hatanian of two of the three stocks that it references in the Amended Complaint as having some sort of alleged connection to Hatanian. While raising allegations that, in 2020, Hatanian commented that he would not trade on inside information concerning Momenta, the SEC concedes, as it must, that Hatanian did not trade in Momenta and that claims about Momenta involve purchases and sales by only other defendants. The SEC also concedes, as it must, that while it alleged a sale of Momentive stock by Hatanian in 2023 after a public announcement, the Amended Complaint omitted any allegation about a purchase by Hatanian of Momentive stock, let alone based on a tip from anyone. These admissions make clear that the SEC's inclusion of Hatanian in this action was a rushed after-thought.[1]

[1] In its motion for leave to file a Second Amended Complaint, the SEC essentially treats its failure to make such allegations about Hatanian as excusable oversight and suggests that the after-thought of

Now confronted with these deficiencies, the SEC underestimates its pleading burdens in the Amended Complaint (and in the proposed Second Amended Complaint). In its opposition to the motion to dismiss, the SEC takes the position that, despite its own complaint characterizing Hatanian as at least a third-level remote tippee, if not more remote than that, the SEC can still rely on only general or collective allegations. For example, with respect to allegations about iRobot stock in the Amended Complaint, the SEC contends that it can simply refer vaguely to a "tip" and allege the word "knowledge" as a conclusion, without any specificity as to what a tipper told Hatanian, when the tip was made, or how Hatanian knew that the source of the tip had breached a duty of trust and confidence in exchange for a benefit. As described below, the SEC's request to relax its burden in this way has been squarely rejected by courts. The SEC's claims against Hatanian fail in the Amended Complaint (and in the proposed Second Amended Complaint) because there is no factual allegation suggesting Hatanian's awareness that any original tipper breached a duty of trust and confidence by disclosing or misappropriating inside information.

Finally, in its opposition, the SEC agrees that it bears the burden of pleading securities fraud, including scienter, with particularity under Rule 9(b), but then argues for an erroneous threshold far below what is required. Opposition at 2. To make this argument, the SEC distorts a line of cases involving *Dirks*, *Salman v. United States*, 580 U.S. 39 (2016), *In Re Archegos 20A Litig.*, 156 F.4th 108 (2d Cir. 2025), *United States v. Martoma*, 894 F.3d 64 (2d Cir. 2017), and *United States v. Newman,* 773 F.3d 438 (2d Cir. 2014). Also, the SEC relies heavily on cases that predate the developments since 2014 in and following *Newman* in this line of cases.[2] In sum, the SEC's efforts to cast such a wide net

including Hatanian in the original Complaint can be cured with yet another round of amendments. But the SEC's suggested amendments still do not cure the fatal defects concerning the who, what and when of any alleged tip or the lack of a factual allegation reflecting Hatanian's awareness of an upper-level tipper breaching a duty of trust and confidence by disclosing confidential inside information in exchange for a benefit.

[2] As described below, the SEC downplays *Newman*, but acknowledges in its opposition that

over such a remote alleged tippee carries with it difficult hurdles that the SEC does not make a genuine effort to surmount. This Court should dismiss the Amended Complaint and then address the motion for leave to file a Second Amended Complaint, which Hatanian opposes on futility and prejudice grounds.

## Discussion

**The SEC Ignores Constraints on Claims Against Alleged Remote Tippees and Continues to Rely Erroneously on Collective and Conclusory Allegations, Rather than on Adequate Factual Allegations.**

In its opposition, the SEC disregards the ongoing impact of the Supreme Court's decision in *Dirks* and the Second Circuit's decision in *Newman*, and their progeny, on claims against alleged remote (third-level or greater) tippees, as interpreted in more recent Supreme Court and other court cases. The two defendants in *Newman* were "several steps removed from the corporate insiders," and the Supreme Court has cited with approval to the finding there that "there was no evidence that either was aware of the source of the inside information," requiring rejection of the claims. *Salman v. United States*, 580 U.S. 39, 45 (2016). By contrast, the defendant in *Salman* was merely a second level tippee who knew the inside source, and witnesses testified that "any time a major deal came in, (Salman) was the first on [the] phone list" and that Salman was told the identity and role of the person from whom the inside information came. *Id.* at 44, 50.

A subsequent Second Circuit case reiterated the "important teaching" of *Newman* on scienter requirements applicable to alleged remote tippees, which *Salman* had reaffirmed:

> The central question in *Newman* was an issue of scienter on which our district courts had been split: whether a tippee must be aware, not only that the tipper breached a fiduciary duty in disclosing inside information, but also that the tipper received a personal benefit. *Newman*, 773 F.3d at 447-51. The Court persuasively explained that both were required. *Id.* at 449 ("[A] tippee's knowledge of the insider's breach necessarily requires knowledge that the insider disclosed confidential information in exchange for personal benefit."). This important teaching of *Newman* is not before us. We observe that, unlike the defendants in *Newman*, Martoma received confidential information directly from the tipper, and he does not claim that he was unaware of any

---

*Newman* was abrogated only in part and on other grounds as recognized in *Salman* and *Martoma.*

> personal benefit Dr. Gilman received. ...
>
> * * * *
>
> … The government produced compelling evidence that Dr. Gilman, the tipper, "entered into a relationship of *quid pro quo*" with Martoma. ... Dr. Gilman, over the course of approximately 18 months and 43 paid consultation sessions for which he billed $1,000 an hour, regularly and intentionally provided Martoma with confidential information from the bapineuzumab clinical trial. Martoma kept coming back, specifically scheduling consultation sessions so that they would occur shortly after the safety monitoring committee meetings, when Dr. Gilman would have new information to pass along. Starting at least in August 2007, Dr. Gilman would reschedule his conversations with Martoma if he had no new information to reveal at the time they were scheduled to meet. By that point, the consulting relationship between Dr. Gilman and Martoma involved no legitimate service…. And because Martoma continued to see Dr. Gilman to receive confidential information, Dr. Gilman continued to receive consulting fees.

*United States v. Martoma*, 894 F.3d 64, 76-78 (2d Cir. 2017). The *Martoma* decision reflects what a viable tippee theory of liability looks like, while approving, post-*Salman,* the critical scienter requirements that *Newman* established for claims against remote tippees.

Here, the SEC attempts to justify its resort to speculation, in lieu of factual allegations, theorizing that some sort of information may supposedly rest "uniquely within a defendant's knowledge," as had been found in some pre-*Newman* cases. Opposition at 2. But none of the rulings in those cases support the SEC's use of vague, speculative, or conclusory pleadings that fail even to allege the timing and content of any actionable tip here. Likewise, none of those rulings excuse the SEC from its failure to allege a fact reflecting that Hatanian learned of a breach of a duty of trust and confidence by the source of the tip, as required by *Dirks* and its progeny.

A recent Second Circuit decision, *In re Archegos 20A Litig.*, 156 F.4th 108 (2d Cir. 2025), held that securities fraud claims must be dismissed when based on such speculation. First, the *Archegos* court explained that:

> When considering a tipper-tippee claim under the classical theory, we assess whether a corporate insider breached a duty to a company by disclosing the company's confidential information to a third party—the tippee—who then uses that information for an improper purpose. *See Dirks v. S.E.C.*, 463 U.S. 646, 659, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983)). To prevail under this theory, a plaintiff must show that:

> (1) the corporate insider was entrusted with a fiduciary duty; (2) the corporate insider breached his fiduciary duty by (a) disclosing confidential information to a tippee (b) in exchange for a personal benefit; (3) ***the tippee knew of the tipper's breach, that is, he knew the information was confidential and divulged for personal benefit***; and (4) the tippee still used that information to trade in a security or tip another individual for personal benefit.
>
> *United States v. Newman,* 773 F.3d 438, 450 (2d Cir. 2014), *abrogated on other grounds by Salman*, 580 U.S. 39, 137 S.Ct. 420.

*Archegos*, 156 F.4th at 116. (emphasis added). Then, the *Archegos* court acknowledged that some courts had previously relaxed pleading standards for certain kinds of information uniquely in a defendant's possession, but dismissed the claims that were based on speculation about the circumstances and substance of the alleged tips:

> Even though Appellants allege that much of the information related to Appellees' alleged tipping of preferred clients would be in Appellees' exclusive possession, the SAC fails to plead sufficient facts to imply the content and circumstances of such tips. For example, the allegation that trading volume in the Issuers' stocks spiked on March 24, 2021, does not support a conclusion that Appellees tipped their clients about Archegos' financial state. … As the district court aptly summarized: "Without particular factual allegations regarding the tips, it is an entirely conjectural leap to disregard Archegos's flurry of trading activity and instead to attribute the movement in the Issuers' stocks to improper unidentified trading by [Appellees'] unidentified tippees." *Tan*, 2024 WL 1357354, at *9. Accordingly, the SAC's allegation that Appellees engaged in insider trading by tipping preferred clients fails.

*Id.* at 120-21.

To the extent the SEC is attempting here to turn *Dirks*'s requirement of knowledge of a breach into a negligence-type standard, such an attempt must fail. First, as described above, the subsequent decisions in *Salman* and *Martoma* refer to a requirement of actual knowledge, not merely a negligence standard of what a party should have known. Second, when *Dirks* used language about what a tippee "should have known," the Court cited in a footnote for that proposition to Professor Loss analyzing a requirement of actual "notice." *Dirks*, 463 U.S. at 660 & n. 20. Scienter of a remote tippee has not been relaxed to a negligence standard. And, here, the SEC has not alleged actual notice to Hatanian of a

breach of duty, let alone in exchange for a personal benefit.

To validate a conclusory use of the word "knowledge," the SEC relies on a theory that Rule 9(b) allows knowledge to be alleged generally, without supporting facts. Doing so, however, directly violates *Iqbal* itself, which requires factual allegations of knowledge, not only when particularity under Rule 9(b) is required on other elements, but even when particularity is not required. In *Iqbal*, the plaintiff alleged that each defendant at issue approved a challenged practice and that "each knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to wrongdoing. *Iqbal*, 556 U.S. at 669. The Supreme Court rejected this allegation as insufficiently factual even as to a matter that requires only a general allegation:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while **allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term**. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a) ... should control the second sentence of Rule 9(b)"). **And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss**.

*Id.* at 686-87 (emphases added). Similarly, here the SEC cannot allege an undescribed tip or knowledge with just a conclusory use of the word and without a genuine factual allegation. Nor can the SEC recycle Hatanian's alleged belief years earlier that inside information existed in the context of one stock (Momenta, on which he declined to trade), to satisfy the knowledge requirement as to two different stocks, iRobot and Momentive, years later. Yet that is precisely what the SEC tries to do here, subtly in its First Amended Complaint and somewhat more explicitly in its opposition.

Amid this legal backdrop, the SEC never tackles the heart of the problem here—the reality that

an obligation to abstain from trading or tipping does not arise merely because one has received inside information. More is required, which the SEC appears to forget or simply ignores. As a result, the SEC's allegations as to Hatanian remain fatally plagued by too many holes and questions to satisfy the applicable plausibility standards. Gaps in the SEC's allegations raise at least the following questions:

- With respect to Momenta stock, how can an insider trading claim proceed against Hatanian when he stated he would not trade in it and then lived up to his word?
- With respect to Momentive stock three years later, why is there no allegation in the Amended Complaint of a purchase by Hatanian (and still no allegation of the existence, timing, or circumstances of any tip concerning Momentive stock in the Second Amended Complaint)?
- With other defendants alleged to have tipped others and paid kickbacks up a chain, but no such allegations against Hatanian, what facts adequately support imputing other defendants' scienter to him through collective pleading that depends on a yet unalleged date and content of a purported, but unspecified, material "tip"?
- With respect to iRobot, while the SEC's opposition suggests early dates on which talks between Amazon and iRobot may have triggered trading, despite uncertainty among alleged sources of information about the status which, according to Paragraph 130 of the Amended Complaint, "was not fully known to them during late June and early July 2022," when did the two entities discuss prices even remotely near each other? [3]
- Why has the SEC refrained from making allegations about Hatanian's typical trading strategies, describing the extent to which they include derivative trades in other securities and consideration of anticipated earnings announcements, or acknowledge in allegations that, on July 25, 2022, iRobot publicly scheduled an earnings announcement for August 10, 2022?

[3] The SEC's allegations in the proposed Second Amended Complaint raise yet another question by oddly suggesting that Hatanian's one-time purchase of Amazon stock in June 2022 suggests he knew it must have been the company acquiring iRobot. That makes no sense. Why would a purchase of an acquiring company's stock, here Amazon, suggest that Hatanian knew about an acquisition when the common thinking is that the announcement of a merger or acquisition generally causes the acquiring company's stock to drop? A more plausible reason for Hatanian's Amazon purchase lies in public records the SEC has omitted from its submission, including a public announcement of a 20-for-1 stock split and authorization for a $10 billion share buyback *effective June 6, 2022*. The SEC's belated resort to incomplete factual allegations about Amazon reflects a desperate effort to throw enough against the wall in the hope that something may stick against an obvious after-thought defendant in this case.

These questions emerge, at least in part, from the SEC's decision here not to engage in its usual Wells process, instead tagging along with a criminal charge in which an unduly wide net has been cast, which often accompanies the hope of turning some subjects into cooperating witnesses.

Without providing answers to these questions, instead the SEC's opposition poses its own question about Hatanian's reference to records of an actual purchase of plane tickets for an actual flight by his parents to explain the use of the word "flight" in a text message. Opposition at 7, n. 3. The SEC either failed to investigate this fact in its haste to add Hatanian to the complaint or chose to omit it from its pleading. The SEC argues, "Hatanian fails to explain why it would be a reasonable inference that Simon Fensterszaub was actually referencing Hatanian's parents' flight to Florida when he told Hatanian on June 13, 2022 to 'call me … about the flight' as opposed to speaking in the coded language used by numerous Defendants – including and especially Simon Fensterszaub – to conceal the insider trading scheme." *Id.* (Ellipses in original). But that "why" is the wrong question because the SEC's logic is backwards. The burden is on the SEC to plead facts suggesting that a secret dictionary used by others about a fictional flight is more plausible than an actual flight at that time for Hatanian's parents. With respect to the words "flight" or "rabbi" in context, the SEC has not satisfied *its* burden, neglecting to allege a single fact to suggest Hatanian was privy to any secret dictionary that one person supposedly used with him in isolation, without Hatanian providing an unnatural response or ever using the alleged code himself. Besides, Hatanian has not relied for dismissal on the record of the pertinent flight he purchased for his parents for a few days later, but rather offered it to show why a dismissal should be *with prejudice* when the SEC cannot overcome that fact.

In sum, the SEC has failed to plead sufficient plausible facts against Hatanian as an alleged remote tippee. In violation of *Iqbal*, the SEC relies on a theory of an undescribed tip without specifying the requisite "notice" to Hatanian of a breach by an insider, *Dirks*, 463 U.S. at 660 & n. 20, and has

made no factual allegation of Hatanian's knowledge of any such breach being in exchange for a benefit, contrary to *Dirks*, *Newman* and their progeny. Additionally, the Amended Complaint does not allege a purchase or sale of Momenta stock or a purchase of or tip about Momentive stock. As a result, this Court should review this motion without the distraction of allegations uniquely against 21 other defendants who have been alleged to tip others or pay kickbacks involving countless other stocks, but rather review the claim against Hatanian as if brought in its own action based solely on iRobot stock. Accordingly, the SEC's claim against Hatanian in the Amended Complaint should be dismissed.

**Conclusion**

Based on the foregoing, this Court should dismiss the Second Claim for Relief against Hatanian with prejudice.

Respectfully submitted,
Boruch Hatanian
by his attorneys,

*/s/ Lauren A. Riddle*

Barry S. Pollack (BBO# 642064)
bpollack@psdfirm.com
Lauren A. Riddle (BBO# 703859)
lriddle@psdfirm.com
Pollack Solomon Duffy LLP
31 St. James Ave. Suite 830
Boston, MA 02116
617.439.9800
Dated: September 8, 2026

CERTIFICATE OF SERVICE

I, Lauren A. Riddle, certify that on September 8, 2026, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Lauren A. Riddle*
Lauren A. Riddle