UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NICOLO NOURAFCHAN,<br>ROBERT YADGAROV,<br>MARK ALPERIN,<br>MIAKEL BISHAY,<br>ARYA BOLURFRUSHAN,<br>DAVID BRATSLAVSKY,<br>BRIAN FENSTERSZAUB,<br>MARK FENSTERSZAUB,<br>SIMON FENSTERSZAUB,<br>GABRIEL GERSHOWITZ,<br>FERNANDO GRINBERG,<br>BORUCH HATANIAN,<br>YISROEL HOROWITZ,<br>JOSEPH IZSAK,<br>DANIEL KAVIAN,<br>ELIYAHU KAVIAN,<br>NOWEL MILIK,<br>LORENZO NOURAFCHAN,<br>DAVID OSTROV,<br>GAVRYEL SILVERSTEIN,<br>JOSEPH SUSKIND, and<br>SETH WINSLOW,<br><br>Defendants. | Civil Action No. 26-cv-12068 (LTS) |

**DEFENDANT BORUCH HATANIAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Defendant Boruch Hatanian respectfully submits this memorandum in support of his opposition to the SEC's motion for leave to file a Second Amended Complaint because it is futile as to Hatanian and unduly prejudicial in light of certain terms of the Order staying this action.

## Preliminary Statement

In its Second Amended Complaint, the SEC's pleading issues have escalated from a clear problem under *Dirks v. S.E.C.*, 463 U.S. 646 (1983) and its progeny, to clearly defective arguments under *Ashcroft v. Iqbal*, 556 U.S. 678 (2009). The SEC has failed to plead (1) the particularity of when, what, and who concerning an alleged tip of material information to Hatanian, and (2) facts reflecting Hatanian's awareness of a tipper up the chain having breached a duty of trust and confidence by disclosing confidential inside information in exchange for a benefit. Through changes that appear in its Second Amended Complaint and the accompanying motion papers, the SEC essentially concedes that (1) it did not (because it cannot) allege that Hatanian purchased or sold stock in Momenta, (2) Hatanian's name did not belong in the collective allegations in the original Paragraph 118 describing a specific access to inside information linked to specific stock purchases on a specific date, (3) it cannot allege any who, what, or when of any tip to Hatanian concerning Momentive stock, and (4) it cannot allege that anyone made Hatanian aware that any original source of pertinent information breached a duty by disclosing it and did so in exchange for a benefit. In these respects, the SEC has cast too wide a net to reach Boruch Hatanian as an alleged third-level (or potentially even more remote) tippee.

The Second Claim for Relief in the Second Amended Complaint, which is the only claim against Hatanian, contains insufficient factual allegations of (1) when he received *material* non-public information, what it was, and from whom for the two stocks in which he allegedly traded, and, (2) his knowledge that the original tipper received anything of value or benefit in exchange for providing information about those two stocks in breach of a duty, as required by *Dirks v. S.E.C.*, 463 U.S. 646 (1983) and its progeny. More specifically in connection with these deficiencies, the SEC's claim also ***fails to allege facts*** that support its conclusory allegation of Hatanian's purported knowledge about how or when an original tipper came into possession of nonpublic information,

the existence or meaning of any alleged code word, or any deviation from Hatanian's typical timing or nature of trades. Instead, the SEC fatally relies on conclusory group or collective pleading, or on the superficial use of the word "knowledge," arguing that is permitted as part of pleading generally. In context, however, none of the innuendo in the Second Amended Complaint is supported by sufficient *factual* allegations to sustain a claim against Hatanian. Rather, the *factual* allegations make it at least as plausible as anything else that Hatanian engaged in any trading at issue for non-actionable reasons. As described in more detail below, the SEC has failed to plead with particularity its insider trading claim against such a remote alleged tippee as Hatanian, and therefore the SEC's request for leave to file the Second Amended Complaint must be rejected.

**Background**

As with its previous complaints, the SEC's Second Amended Complaint continues to center around conduct by actors other than Hatanian in connection with more than ten stocks in which he never traded. Also like its prior complaints, the Second Amended Complaint does not allege with particularity the when, what and who concerning Hatanian's receipt of allegedly material non-public information for both of the stocks in which he allegedly traded or, as required by controlling law, his awareness that an original tipper received something of value or benefit in exchange for information about the two stocks in breach of a duty.

The redlined version of the SEC's proposed Second Amended Complaint at Exhibit B to its motion is telling. In Paragraphs 59 to 183 of the Second Amended Complaint, the SEC makes allegations about six stocks involved in an alleged insider trading scheme and then, in Paragraph 184 and a chart that follows, identifies seven other stocks involved in the alleged scheme. Of these thirteen stocks, the SEC claims in Paragraph 81 that someone mentioned one of them to Hatanian in 2020, Momenta Pharmaceuticals, Inc., ***but Hatanian declined to trade in it***. The SEC then alleges that, nearly

two years later, Hatanian traded in iRobot, Inc., but now ***has been forced to remove Hatanian's name from the key allegations in Paragraph 118*** about the timing of a tip and transactions of others. In a new Paragraph 128, the SEC alleges in the passive, "having been tipped" (without date, content or source) and, in a conclusory way, "knowing" that the tip came from an insider, consistent with the SEC's position in its opposition to the motion to dismiss that it can plead knowledge "generally" (Opposition at 2), rather than with particularity. And then the SEC alleges that, in the following year, Hatanian traded in Momentive Global, Inc. at a similar time as others, but without any allegation of a tip to Hatanian at all, let alone with the who, what, or when of a tip. Also, nowhere in the Second Amended Complaint is there a ***factual*** allegation that Hatanian knew a source of information breached a duty in exchange for a benefit. Furthermore, there is no allegation of any connection between Hatanian and the other ten stocks cited in the Amended Complaint.

Finally, on page 5 of its motion for leave to amend, and on page 2 of its opposition to the motion to dismiss, the SEC acknowledges that it bears the burden of pleading securities fraud with particularity under Rule 9(b), including scienter, but then argues for an erroneous threshold far below what is required. Memo. in Support of Motion for Leave at 5, Opp. to Motion to Dismiss at 2. To make its argument for a relaxed standard, the SEC distorts and omits decisions in a line of cases involving *Dirks*, *Salman v. United States*, 580 U.S. 39 (2016), *In Re Archegos 20A Litig.*, 156 F.4th 108 (2d Cir. 2025), *United States v. Martoma*, 894 F.3d 64 (2d Cir. 2017), and *United States v. Newman,* 773 F.3d 438 (2d Cir. 2014). Also, in its opposition to the motion to dismiss, the SEC relies heavily on cases that predate the developments that evolved in and since 2014 starting with *Newman*.[1] In sum, the SEC's efforts to cast such a wide net over such a remote alleged tippee carries with it difficult hurdles that the SEC does not make a genuine effort to surmount. This Court should deny the SEC's motion for leave to file the

[1] As described below, the SEC downplays *Newman* but acknowledges in its opposition that *Newman* was abrogated only in part and on other grounds as recognized in *Salman* and *Martoma.*

Second Amended Complaint, which Hatanian opposes on both futility and prejudice grounds.

**Momenta**

With respect to Momenta, the SEC does not allege in the Second Amended Complaint that Hatanian traded in it. Indeed, the SEC alleges the opposite. According to the allegations, in paragraph 81, on August 17, 2020, when a co-defendant sent a message to Hatanian that the co-defendant's brother-in-law said something about a "done deal, the announcement will be either this week or next[,]" Hatanian responded, "can't trade on inside info - but fundamentals look good | and I've wanted to add a pharma company to my portfolio." There is no allegation, however, that Hatanian then purchased or sold Momenta stock (because he did not do so).

**iRobot**

With respect to iRobot, the SEC alleges in Paragraph 128 of the Second Amended Complaint that, on June 13, 2022, a co-defendant sent a message to Hatanian, stating: "I hope everything is going well. Call me when you have a moment to talk about the flight[,]" and the two spoke by phone that afternoon. There is no allegation, however, that Hatanian knew of any secret code meant by the word "flight." Unlike others who are alleged to have had suspect communications and made trades within minutes or hours, *e.g.*, Am. Compl. ¶¶ 119, 120, 124, 145, for Hatanian, two days passed between the alleged June 13, 2022, message and Hatanian's purchase on June 15, 2022, of iRobot shares, followed the next day by another purchase.[2] Indeed, as can be seen in its redlined version of the Second

[2] On the merits of a motion to dismiss, the Court is not entitled to consider extrinsic evidence beyond the four corners of the complaint, except for documents incorporated therein and documents subject to judicial notice. There is no corresponding rule prohibiting the Court from considering an indisputably authentic document for purposes of determining whether a dismissal should be with or without prejudice. Here, the SEC was placed on notice in Hatanian's original motion to dismiss the Amended Complaint that Hatanian purchased plane tickets for his parents a few days earlier, on June 10, 2022, for a flight to visit for family reasons that week on June 15, 2022. *See* Declaration of Barry Pollack, Exhibit A. A comparison of the context for the word flight in Paragraph 128 compared to allegations about its use elsewhere in the Amended Complaint against others tends to show that, without further factual allegations concerning Hatanian, the word

Amended Complaint, the SEC removed Hatanian's name from its critical allegations in Paragraph 118 because the inclusion of his name was baseless.

In Paragraph 129, the SEC makes allegations about a co-defendant sending a message to Hatanian a day after those two purchases, on June 17, 2022, stating "I hope to find out today when the Rabbi's surgery is going to take place." In other parts of the Second Amended Complaint, the SEC treats references to a rabbi as a code among other co-defendants. The SEC does not, however, direct any factual allegation to Hatanian reflecting that he knew of or himself used any secret code that included a reference to a rabbi's surgery or that a discussion with a member of his synagogue about a rabbi or his response was atypical. Even if the writer meant something coded by the June 17, 2022 message, on its face, the quote "I hope to find out" is not about existing information and there is no purchase or sale of iRobot by Hatanian in meaningful proximity to that communication.

Tellingly, in Paragraph 133, the SEC acknowledges that, as of the time of that message on June 17, 2022, the co-defendant who wrote it lacked specific information: "the status of [the Amazon-iRobot transaction] was not fully known to them during late June and early July 2022." Yet, despite this acknowledged uncertainty of any non-public information "during late June and early July 2022," the SEC does not allege any other communication between Hatanian and anyone else after June 17, 2022. In other words, the only alleged communication between Hatanian and a co-defendant at about that time occurred when the SEC indicates information about a potential acquisition was uncertain, rather than material and, even then, the SEC does not suggest what was supposedly said to Hatanian. Finally, the SEC relies on an allegation that Hatanian had not purchased iRobot before, but it does not allege that either the size or types of investments were unusual for him (and have not indicated any good faith basis for doing so). There is also no allegation of what, if anything, anyone told Hatanian about a source of

"flight" in communications with Hatanian more plausibly than not meant just a "flight."

information about iRobot, let alone that the source breached a duty in exchange for a benefit, or that Hatanian gave anything of value in exchange for the information.

**Momentive**

With respect to Momentive, the SEC's allegations against Hatanian remain sparse. In its Complaint and Amended Complaint, the SEC forgot to allege that Hatanian purchased stock, making clear his status as an after-thought in this case. The new allegations about Momentive against Hatanian, in Paragraph 156.h., still do not include any suggestion that he received a particular tip, let alone when, by whom, and what was tipped. Also still glaringly absent is any factual allegation about who provided information to Hatanian about Momentive, and how and when that happened ahead of any purchase or sale. Hatanian appears here from a half-hearted, late addition by the SEC. And public records reflect rumors about Momentive being up for sale, dating back to October 2022. *See* Momentive Global Enters into Definitive Agreement to Be Acquired by Symphony Technology Group for $1.5 Billion, https://www.sec.gov/Archives/edgar/data/1739936/000119312523069366/d484732dex991.htm (referring to the "closing stock price on the day prior to media rumors regarding a potential sale on October 19, 2022"). There is also no allegation of what, if anything, anyone told Hatanian concerning a source of information about Momentive, let alone that the source breached a duty in exchange for a benefit, or that Hatanian gave anything of value in exchange for the information. Even three iterations of its complaint cannot cure the pleading defects as to a clear after-thought by the SEC.

**Group and Collective Pleading**

Beyond its flawed allegations specific to Hatanian, the SEC relies heavily on contradictory and problematic group or collective pleading. For example, in the original Paragraph 118 from the Complaint and Amended Complaint, the SEC ambiguously alleged that nine defendants, including Hatanian, began making purchases of iRobot on June 9, 2022, "after speaking with Silverstein and other

defendants." But, for accuracy purposes, the SEC has removed that Hatanian's name from that allegation in the Second Amended Complaint. The SEC has also lessened the aggressiveness of some other allegations against Hatanian in the Second Amended Complaint. For example, the SEC had alleged that he purchased various series of iRobot options "between June 16, and August 2, 2022" and "continued to purchase iRobot shares through July 29, 2022[.]" The SEC has acknowledged the inaccuracy of such allegations by instead alleging in the Second Amended Complaint that Hatanian's post-June 16, 2022 purchases did not occur until July 29, 2022. *See* Paragraph 130.

Other improper collective or group pleading remains. As an example, in Paragraph 4 of the Second Amended Complaint, the SEC continues to describe the scheme as involving two alleged high-level tippers who "tipped the confidential information to individuals who agreed to kick back a portion of the trading profits." In other places, the Second Amended Complaint alleges that certain defendants paid kickbacks or began paying kickbacks to Nourafchan and Yadgarov, and in Paragraphs 151 and 159 that "certain of the defendants began paying kickbacks" to certain high-level tippers and "others (routed through other defendants) for the tips of confidential information." While each iteration of the complaint makes these collective or group allegations about co-defendants paying a kickback, the SEC's third bite at the apple still does not make a *factual* allegation that Hatanian ever made such a payment to anyone.

Fatal to the SEC's theory of liability, the Second Amended Complaint contains only conclusory allegations, rather than specific factual allegations suggesting Hatanian's awareness that the source of the inside information tipped others in breach of a duty of confidentiality and for a personal benefit. That the SEC has not cured this defect in its latest complaint, even after being put on notice of it by Hatanian's motion to dismiss the prior version of the complaint, confirming that the SEC cannot do so. Rather, the SEC continues to allege only generically in Paragraph 10: "Each of the Defendants tipped

others with material nonpublic information for a benefit and/or placed trades while aware of and on the basis of material nonpublic information obtained, directly or indirectly, from sources who they knew or recklessly disregarded had breached a duty to maintain the confidentiality of such information."[3] Similarly, Paragraph 11 makes a vague reference to "other Defendants for a benefit," and in Paragraph 12, the SEC alleges that certain high-level tippers "expected to, and in fact did, receive, directly or indirectly from their co-defendants and Foreign Trader 1, payments and other benefits in exchange for the insider tips they provided." But this group or collective pleading is particularly insufficient where Hatanian is alleged to have been at least three levels removed from the original tipper(s) and there is no allegation that he ever gave anything of value to any alleged tipper. And other group or collective pleading in the Second Amended Complaint uses nothing more than conclusory statutory language, which makes those sorts of allegations a nullity.

## Argument

### I. Leave to File an Amended Pleading Should be Denied if it Would be Futile or Cause Undue Prejudice.

"Rule 15 'instructs courts to freely give leave to amend' pleadings in the absence of a reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Donohue v. City of Methuen*, No. CV 18-10713-LTS, 2019 WL 2162885, at *1 (D. Mass. May 17, 2019) (quoting *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015) (citations and internal quotations omitted). "Typically, at this early stage in the proceedings, a Rule 12(b)(6) motion to dismiss is the standard for futility." *Brooks v. Citizens Bank of Massachusetts*, No. CV 19-12231-LTS, 2020 WL 837375, at *1 (D. Mass. Feb. 20, 2020) (citing

[3] To the extent the SEC argues that this allegation could vaguely suggest through group pleading that Hatanian "tipped others," there is no indication in any specific factual allegation that the SEC meant to apply that allegation to Hatanian.

*Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).

On a motion to dismiss, the "well-pleaded facts in the complaint are taken as true." *S.E.C. v. Papa*, 555 F.3d 31, 32 (1st Cir. 2009). "[T]he court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *S.E.C. v. Tambone*, 417 F. Supp. 2d 127, 130 (D. Mass. 2006). "In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *Id.* A claim has the requisite "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gill v. Bluebird Bio, Inc.*, 784 F. Supp. 3d 422, 430 (D. Mass. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

With respect to alleged schemes sounding in fraud, "Rule 9(b) requires that a complaint allege the 'time, place, and content of the alleged misrepresentations with specificity.'" *Tambone*, 417 F. Supp. 2d at 130. Even such a complaint by the SEC "must specify: 1) the allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements were made and 4) how the statements were fraudulent." *Id.* (rejecting SEC's request to relax Rule 9(b) pleading standards for its claims); *Ezell v. Lexington Ins. Co.*, 926 F.3d 48, 51 (1st Cir. 2019) (when particularity is required under Rule 9(b), the claim "must state 'the who, what, where, and when of the allegedly [misleading] representation' with particularity"). "In applying that standard to securities fraud actions, this circuit has been notably strict and rigorous." *S.E.C. v. Durgarian*, 477 F. Supp. 2d 342, 347-48 (D. Mass. 2007) ("The instant enforcement action by the SEC involves claims of securities fraud, and thus, the heightened pleading requirements apply."), *aff'd sub nom. S.E.C. v. Papa*, 555 F.3d 31 (1st Cir. 2009). Courts have also held that generally a complaint "may not rely on 'group pleading' to plead scienter." *In re Tyco Int'l, Ltd.*, No. 04–cv–1336–PB, 2007 WL 1687775, at *6 n. 8 (D.N.H. June 11, 2007).

Here, the SEC's third bite at the apple in a proposed Second Amended Complaint is futile as against Hatanian. As described in more detail below, the SEC still fails to make *factual* allegations establishing all the elements of its claims against Hatanian. Glaringly, the SEC fails to allege a tip with particularity, instead insisting that somehow it is entitled to use just the conclusory phrase "having been tipped" in the passive form without supporting allegations that meet the particularity standard. Similarly, the SEC insists that it can use the word "knowing" or "knowingly" without a supporting factual allegation that makes the allegation plausible. As a result, for the reasons set forth below, the SEC's motion for leave to file the Second Amended Complaint should be denied.

## II. The Second Amended Complaint is Futile as to Hatanian Because the SEC Has Failed to Allege (a) with Particularity the Source, Content, and Timing of a Tip With Material Non-Public Information Tied to Any Purchase by Hatanian, and (b) that, as an Alleged Remote Tippee, Hatanian Had Knowledge that a High-Level Tipper Breached a Duty by Disclosing Material Non-Public Information and Received a Benefit for so Doing.

With the heightened pleading standards of particularity in mind, the government cannot state a claim for insider trading "solely because a person knowingly receives material nonpublic information from an insider and trades on it." *Dirks v. S.E.C.*, 463 U.S. 646, 658 (1983). "[A]remote tippee, in order to be held liable for securities fraud, must know that the original tipper disclosed market-sensitive information in breach of a fiduciary duty and received some personal benefit from the disclosure." *Gordon v. Sonar Capital Mgmt. LLC*, 116 F. Supp. 3d 360, 363 (S.D.N.Y. 2015). "[E]ven if detail and specificity could support an inference as to the *nature* of the source, it cannot, without more, permit an inference as to that source's improper *motive* for disclosure." *United States v. Newman,* 773 F.3d 438, 455 (2d Cir. 2014) (emphasis in original), *abrogated on other grounds*, *Salman v. United States*, 580 U.S. 39, 48 (2016) ("The Government also notes that, to establish a defendant's criminal liability as a tippee, it must prove that the tippee knew that the tipper breached a duty—in other words, that the tippee knew that the tipper disclosed the information for a personal benefit and that the tipper expected trading

to ensue.”).

In its opposition, the SEC disregards the ongoing impact of the Supreme Court’s decision in *Dirks*, the Second Circuit’s decision in *Newman*, and their progeny on claims against alleged remote (third-level or greater) tippees, as interpreted in more recent Supreme Court and other court cases. The two defendants in *Newman* were “several steps removed from the corporate insiders,” and the Supreme Court has cited with approval to the finding there that “there was no evidence that either was aware of the source of the inside information,” thereby requiring rejection of the claims. *Salman v. United States*, 580 U.S. 39, 45 (2016). By contrast, the defendant in *Salman* was merely a second level tippee who knew the inside source, and witnesses testified that “any time a major deal came in, (Salman) was the first on [the] phone list” and that Salman was told the identity and role of the person from whom the inside information came. *Id.* at 44, 50.

A subsequent Second Circuit case reiterated the “important teaching” of *Newman* on scienter requirements applicable to alleged remote tippees, which *Salman* had reaffirmed:

> The central question in *Newman* was an issue of scienter on which our district courts had been split: whether a tippee must be aware, not only that the tipper breached a fiduciary duty in disclosing inside information, but also that the tipper received a personal benefit. *Newman*, 773 F.3d at 447-51. The Court persuasively explained that both were required. *Id.* at 449 (“[A] tippee’s knowledge of the insider’s breach necessarily requires knowledge that the insider disclosed confidential information in exchange for personal benefit.”). This important teaching of *Newman* is not before us. We observe that, unlike the defendants in *Newman*, Martoma received confidential information directly from the tipper, and he does not claim that he was unaware of any personal benefit Dr. Gilman received. ...
>
> * * * *
>
> … The government produced compelling evidence that Dr. Gilman, the tipper, “entered into a relationship of *quid pro quo*” with Martoma. ... Dr. Gilman, over the course of approximately 18 months and 43 paid consultation sessions for which he billed $1,000 an hour, regularly and intentionally provided Martoma with confidential information from the bapineuzumab clinical trial. Martoma kept coming back, specifically scheduling consultation sessions so that they would occur shortly after the safety monitoring committee meetings, when Dr. Gilman would have new information to pass along. Starting at least in August 2007, Dr. Gilman would reschedule his conversations with Martoma if he had no new information to reveal at the time they were scheduled

> to meet. By that point, the consulting relationship between Dr. Gilman and Martoma involved no legitimate service…. And because Martoma continued to see Dr. Gilman to receive confidential information, Dr. Gilman continued to receive consulting fees.

*United States v. Martoma*, 894 F.3d 64, 76-78 (2d Cir. 2017). The *Martoma* decision reflects what a viable tippee theory of liability looks like, while approving, post-*Salman,* the critical scienter requirements that *Newman* established for claims against remote tippees.

Here, the SEC attempts to justify its resort to speculation, in lieu of factual allegations, having theorized in its opposition to the motion to dismiss the Amended Complaint that some sort of information may supposedly rest "uniquely within a defendant's knowledge," as had been found in some pre-*Newman* cases. Opposition at 2, 8-9. But none of the rulings in those cases support the SEC's use of vague, speculative, or conclusory pleadings that fail even to allege the timing and content of any actionable tip here. Likewise, none of those rulings excuse the SEC from its failure to allege a fact reflecting that Hatanian learned of a breach of a duty of trust and confidence by the source of the tip, in exchange for a benefit, as required by *Dirks* and its progeny.

A recent Second Circuit decision, *In re Archegos 20A Litig.*, 156 F.4th 108 (2d Cir. 2025), held that securities fraud claims must be dismissed when based on such speculation. First, the *Archegos* court explained that:

> When considering a tipper-tippee claim under the classical theory, we assess whether a corporate insider breached a duty to a company by disclosing the company's confidential information to a third party—the tippee—who then uses that information for an improper purpose. *See Dirks v. S.E.C.*, 463 U.S. 646, 659, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983)). To prevail under this theory, a plaintiff must show that:
>
> > (1) the corporate insider was entrusted with a fiduciary duty; (2) the corporate insider breached his fiduciary duty by (a) disclosing confidential information to a tippee (b) in exchange for a personal benefit; (3) ***<u>the tippee knew of the tipper's breach, that is, he knew the information was confidential and divulged for personal benefit</u>***; and (4) the tippee still used that information to trade in a security or tip another individual for personal benefit.
>
> *United States v. Newman,* 773 F.3d 438, 450 (2d Cir. 2014), *abrogated on other grounds by Salman*, 580 U.S. 39, 137 S.Ct. 420.

*Archegos*, 156 F.4th at 116. (emphasis added). Then, the *Archegos* court acknowledged that some courts had previously relaxed pleading standards for certain kinds of information uniquely in a defendant's possession, but dismissed the claims that were based on speculation about the circumstances and substance of the alleged tips:

> Even though Appellants allege that much of the information related to Appellees' alleged tipping of preferred clients would be in Appellees' exclusive possession, the SAC fails to plead sufficient facts to imply the content and circumstances of such tips. For example, the allegation that trading volume in the Issuers' stocks spiked on March 24, 2021, does not support a conclusion that Appellees tipped their clients about Archegos' financial state. … As the district court aptly summarized: "Without particular factual allegations regarding the tips, it is an entirely conjectural leap to disregard Archegos's flurry of trading activity and instead to attribute the movement in the Issuers' stocks to improper unidentified trading by [Appellees'] unidentified tippees." *Tan*, 2024 WL 1357354, at *9. Accordingly, the SAC's allegation that Appellees engaged in insider trading by tipping preferred clients fails.

*Id.* at 120-21.

To the extent the SEC is attempting here to turn *Dirks*'s requirement of knowledge of a breach into a negligence-type standard, such an attempt must fail. First, as described above, the subsequent decisions in *Salman* and *Martoma* refer to a requirement of actual knowledge, not merely a negligence standard of what a reasonable party would know. Second, when *Dirks* used language about what a tippee "should have known," the Court cited in a footnote for that proposition to Professor Loss analyzing a requirement of actual "notice." *Dirks*, 463 U.S. at 660 & n. 20. The scienter requirement for a remote tippee has not been relaxed to a negligence standard. And, here, the SEC has not alleged actual notice to Hatanian of a breach of duty, let alone in exchange for a personal benefit.

Amid this legal backdrop, the SEC never tackles the heart of the problem here—the reality that an obligation to abstain from trading or tipping does not arise merely because one has received inside information. More is required, which the SEC appears to forget or simply ignores. As a result, the SEC's allegations as to Hatanian remain fatally plagued by too many holes and questions to satisfy the

applicable plausibility standards. Gaps in the SEC's allegations raise at least the following questions:

- With respect to Momenta stock, how can an insider trading claim proceed against Hatanian when he stated he would not trade in it and then lived up to his word?

- With respect to Momentive stock three years later, why is there no allegation in the Second Amended Complaint of the existence, timing, or circumstances of a tip to Hatanian concerning Momentive stock?

- With other defendants alleged to have tipped others and paid kickbacks up a chain, but no such allegations against Hatanian, what facts adequately support imputing other defendants' scienter to him through collective pleading that depends on a yet unalleged date and content of a purported, but unspecified, material "tip"?

- With respect to iRobot, while the SEC's opposition suggests early dates on which talks between Amazon and iRobot may have triggered trading, despite uncertainty among alleged sources of information about the status which, according to Paragraph 133 of the Second Amended Complaint, "was not fully known to them during late June and early July 2022," when did the two entities discuss prices even remotely near each other, and what alleged tip to Hatanian occurred after that?[4]

- Why has the SEC refrained from making allegations about Hatanian's typical trading strategies, describing the extent to which they include derivative trades in other securities or consideration of anticipated earnings announcements, or acknowledge in allegations that, on July 25, 2022, iRobot publicly scheduled an earnings announcement for August 10, 2022?

These questions emerge, at least in part, from the SEC's decision here not to engage in its usual Wells

---

[4] The SEC's new allegations in the proposed Second Amended Complaint raise yet another question by oddly suggesting that Hatanian's one-time purchase of Amazon stock in June 2022 suggests he knew it must have been the company acquiring iRobot. That makes no sense. Why would a purchase of an acquiring company's stock, here Amazon, suggest that Hatanian knew about an acquisition when the common thinking is that the announcement of a merger or acquisition generally causes the acquiring company's stock to drop? The SEC knew enough about that principle to refrain from making this allegation in its first two iterations of the complaint. One of the more plausible reasons for Hatanian's Amazon purchase lies in public records the SEC has omitted from its submission, including a public announcement of a 20-for-1 stock split and authorization for a $10 billion share buyback *effective June 6, 2022*. The SEC's belated resort to incomplete factual allegations about Amazon reflects a desperate effort to throw enough against the wall in the hope that something may stick against an obvious after-thought defendant in this case.

process, instead tagging along with a criminal charge in which an unduly wide net has been cast, which often accompanies the hope of turning some subjects into cooperating witnesses.

Without providing answers to these questions, instead the SEC's opposition to the motion to dismiss the Amended Complaint posed its own question about Hatanian's reference to records of an actual purchase of plane tickets for an actual flight for his parents to explain the use of the word "flight" in a text message. Opposition at 7, n. 3. The SEC either failed to investigate this fact in its haste to add Hatanian to the action or chose to omit it from its pleading. The SEC argues, "Hatanian fails to explain why it would be a reasonable inference that Simon Fensterszaub was actually referencing Hatanian's parents' flight to Florida when he told Hatanian on June 13, 2022 to 'call me … about the flight' as opposed to speaking in the coded language used by numerous Defendants – including and especially Simon Fensterszaub – to conceal the insider trading scheme." *Id.* (Ellipses in original). But that "why" is the wrong question because the SEC's logic is backwards. The burden is on the SEC to plead facts suggesting that a secret dictionary used by others about a fictional flight is more plausible than an actual flight at that time for Hatanian's parents. With respect to the words "flight" or "rabbi" in context, the SEC has not satisfied *its* burden, neglecting to allege a single fact to suggest Hatanian was privy to any secret dictionary that one person supposedly used with him in isolation, without Hatanian providing an unnatural response, or without Hatanian using an alleged code word himself. Besides, Hatanian has not relied for dismissal on the record of the pertinent flight he purchased for his parents for a few days later, but rather offered it on his motion to dismiss to show why a dismissal of the Amended Complaint should be *with prejudice* when the SEC cannot overcome that fact after multiple bites at the apple.

The SEC has failed to plead plausible facts against Hatanian as an alleged remote tippee. In violation of *Iqbal*, the SEC relies on a theory of an undescribed tip without specifying the requisite "notice" to Hatanian of a breach by an insider, *Dirks*, 463 U.S. at 660 & n. 20, and has made no factual

allegation of Hatanian's knowledge of any such breach being in exchange for a benefit, contrary to *Dirks*, *Newman* and their progeny. Additionally, the Second Amended Complaint does not allege a purchase or sale of Momenta stock or a tip about Momentive stock. As a result, this Court should review this motion without the distraction of allegations uniquely against 21 other defendants who have been alleged to tip others or pay kickbacks involving countless other stocks, but rather review the claim against Hatanian as if brought in its own action based solely on iRobot stock. Under such a review, the SEC's motion for leave to file the Second Amended Complaint should be denied.

With respect to Momenta, the lack of a trade (or allegations of a tip) by Hatanian means no securities fraud. *S.E.C. v. Adoni*, 60 F. Supp. 2d 401, 407 (D.N.J. 1999) (rejecting the SEC's efforts "to expand Section 10(b) liability to instances in which the accused have not taken all the necessary steps for effectuating the fraud, or have been prevented from effectuating the fraud by an outside source").

With respect to iRobot, Paragraph 133 makes clear that, prior to late July 2022, there was uncertainty among the alleged sources about a potential transaction involving iRobot. Specifically, Paragraph 133 acknowledges that "the status of [the Amazon-iRobot transaction] was not fully known to them during late June and early July 2022," and states that the sources were "questioning whether [the transaction] was going to occur all." With no accompanying allegations of the "probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity[,]" (*Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) (to determine materiality, courts must assess the "probability that the event will occur"), the SEC is asking this Court to speculate about what information might have been material in mid-June, when the only alleged communication with Hatanian occurred. Similarly, the SEC is asking the Court to speculate about how and what information was passed to Hatanian ahead of trades in late July. There is also no *factual* allegation that Hatanian knew that the source of any information about iRobot breached a duty by disclosing it and did so in exchange

for a personal benefit.

With respect to Momentive, the SEC has now added purchasing activity that it previously omitted, without any explanation other than Hatanian being an after-thought, from two prior iterations of the complaint. In prior iterations of the complaint, the SEC had merely pointed to the act of Hatanian "closing out" his position in Momentive based on public information from a *public announcement* of a deal. The allegations about Momentive still do not identify, however, any communication about Momentive with Hatanian preceding a purchase or sale. There is also no *factual* allegation that Hatanian knew that the source of any information about Momentive breached a duty by disclosing it and did so in exchange for a personal benefit.

With Rule 9(b) applicable, requiring particularized allegations, speculation based on inferences upon inferences is not enough to survive a review for futility. Leave to amend should be denied.

## III. Under *Iqbal*, the SEC Has Failed to Allege Facts Reflecting that Hatanian had Knowledge that the Original Tipper Received a Benefit for Disclosing Information.

There is *no factual allegation*, in the Second Amended Complaint, directed at Hatanian personally, that he had knowledge that any high-level tipper or insider breached a duty or received a benefit for disclosing confidential information. There is no allegation that Hatanian knew the nature of an original tipper, or any original tipper's relationship to any nonpublic information or intermediate tippees. Instead, the SEC argued previously, in its opposition to the motion to dismiss the Amended Complaint, that it is entitled to plead "knowledge" or being "tipped" generally. The SEC is wrong.

To validate a conclusory use of the word "knowing" or "knowledge," the SEC relies on a theory that Rule 9(b) allows knowledge to be alleged generally, without supporting facts. Doing so, however, directly violates the holding in *Iqbal* itself, which requires factual allegations of knowledge, not only when particularity under Rule 9(b) is required on elements, but even when particularity is not required. In *Iqbal*, the plaintiff alleged that each defendant at issue approved a challenged practice and that "each

knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to wrongdoing. *Iqbal*, 556 U.S. at 669. The Supreme Court rejected this allegation as insufficiently factual even as to a matter that requires only a general allegation:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while **allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term**. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a) ... should control the second sentence of Rule 9(b)"). **And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss**.

*Id.* at 686-87 (emphases added). Similarly, here the SEC cannot allege "knowledge" or "having been tipped" with just a conclusory use of the word rather than a genuine factual allegation.

Based on the chart in Paragraph 8 of the Second Amended Complaint, which alleges that Hatanian is at least three levels removed from the alleged original tipper who worked for a law firm to the issuers, the SEC has failed to state a viable cause of action against him in the Second Claim for Relief. *See Gordon,* 116 F. Supp. 3d at 366 (even if the "nature" of a tip "could support an inference that Freeman knew that the information originated from inside Sigma, [it] is not a sufficient basis for a jury to conclude that he knew it was disclosed in breach of a fiduciary duty"). There is no factual allegation directed at Hatanian that he paid a kickback or knew anyone paid a kickback. Nor can the SEC recycle Hatanian's alleged belief years earlier that inside information existed in the context of one stock (Momenta, on which he declined to trade back then), to satisfy the knowledge requirement as to two different stocks, iRobot and Momentive, years later. Moreover, even if any of that could support an inference that some sort of tip existed, it is not a sufficient basis for a jury to conclude that he knew it

was disclosed in breach of a fiduciary duty or other duty of trust and confidence, let alone in exchange for a personal benefit. Yet that is precisely what the SEC tries to do here in its Second Amended Complaint. Leave to amend should therefore be denied.

**IV. The SEC's Effort at a Third Bite at the Apple is Unduly Prejudicial to Hatanian in Light of the Order Partially Staying These Proceedings.**

On July 16, 2026, this Court issued an Order granting a motion for a partial stay in this action. Doc. No. 77 at 4. Paragraph 1 of the motion stated that, notwithstanding a stay of a deadline for responsive pleading, "a defendant may file a motion to dismiss the amended complaint within 45 days of the entry of the stay order without otherwise affecting the parameters of the stay set forth below." This ruling contemplated the SEC maintaining its "amended complaint," and Hatanian filed a timely motion to dismiss it. The 45-day period for a motion to dismiss has now passed, thereby creating undue prejudice for Hatanian if the SEC were allowed its third bite at the apple.

**Conclusion**

Based on the foregoing, this Court should deny the SEC's motion for leave to file a Second Amended Complaint based on futility and undue prejudice.

Respectfully submitted,

Boruch Hatanian
by his attorneys,

*/s/ Lauren A. Riddle*
Barry S. Pollack (BBO# 642064)
bpollack@psdfirm.com
Lauren A. Riddle (BBO# 703859)
pduffy@psdfirm.com
Pollack Solomon Duffy LLP
31 St. James Ave. Suite 830
Boston, MA 02116
617.439.9800
Dated: September 9, 2026

CERTIFICATE OF SERVICE

I, Lauren A. Riddle, certify that on September 9, 2026, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Lauren A. Riddle*
Lauren A. Riddle